**William Nicholas IERARDI,**
**Petitioner-Appellee,**

v.

**Frank O. GUNTER, Superintendent,**
**Massachusetts Correctional Institu-**
**tion, et al., Respondents-Appellants.**

No. 75–1273.

United States Court of Appeals,
First Circuit.

Argued Aug. 6, 1975.

Decided Jan. 13, 1976.

Michael C. Donahue, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., and John J. Irwin, Jr., Asst. Atty. Gen., Chief, Crim. Bureau, were on brief, for respondents-appellants.

Margaret D. McGaughey, Boston, Mass., for petitioner-appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

This is an appeal from an order of the district court granting a writ of habeas corpus and dismissing petitioner from the custody of a governor's warrant directing his rendition to Florida. Petitioner, who is serving a Massachusetts sentence at the Massachusetts Correctional Institution at Walpole, is charged in Florida with the crimes of breaking, entering and grand larceny.

On December 28, 1971, the Governor of Florida sent a formal demand for petitioner's rendition to the Governor of Massachusetts. The papers accompanying this demand included certified copies of a two-count information executed by a Florida prosecutor charging petitioner and another with breaking and entering a certain dwelling in Miami Beach and with the larceny of certain personal effects on October 17, 1971; an affidavit of a Miami Beach police officer repeating the allegations of the information and stating that they were within the affiant's knowledge; and a capias ordering petitioner's arrest by Florida sheriffs to answer to the charges in the information.

On September 28, 1972, the Governor of Massachusetts issued a warrant for petitioner's arrest and delivery to the custody of Florida agents. Petitioner sought a state writ of habeas corpus, complaining in part that his arrest on the Massachusetts Governor's warrant would violate the fourth amendment for want of any showing of probable cause in the papers forwarded by the Governor of Florida. The Superior Court dismissed the petition, and the Supreme Judicial Court affirmed. *In re Ierardi,*

Mass., 321 N.E.2d 921 (1975). Both courts held that the rendition warrant satisfied the fourth amendment as well as the Uniform Criminal Extradition Act as enacted in Massachusetts, M.G.L., ch. 276, §§ 11–20R. The Supreme Judicial Court reasoned that while there must be probable cause for an arrest, interstate rendition is only one step in the process of arrest; thus the question of probable cause could be fully litigated in the demanding state following extradition. Mass., 321 N.E.2d at 924, *citing Biddinger v. Commissioner of Police*, 245 U.S. 128, 38 S.Ct. 41, 62 L.Ed.2d 193 (1917); *Matter of Strauss*, 197 U.S. 324, 25 S.Ct. 535, 49 L.Ed. 774 (1905). The court added that in any event "it here appears that under Florida law an information alone is considered the equivalent of an indictment and sufficient itself to establish probable cause. . . ." Mass., 321 N.E.2d at 924.

Following this decision petitioner filed his federal habeas corpus petition in the district court. Shortly thereafter the United States Supreme Court decided *Gerstein v. Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), a case presenting a constitutional challenge to Florida's practice of arresting and holding for trial persons charged by information. Rejecting Florida's contention that the prosecutor's decision to file an information is a determination of probable cause sufficient to justify detention pending trial, the Court held in *Gerstein* that "the Fourth Amendment requires a timely judicial determination of probable cause as a prerequisite to detention." *Id.* at 126, 95 S.Ct. at 869.

In granting the writ in the present case, the district court found that *Gerstein* "substantially changed the state of the law on which the Supreme Judicial Court relied in its decision herein." The court held that extradition warrants are required to comply with fourth amendment standards and that the instant warrant was not based on probable cause and therefore did not comply.

■ We agree with the district court that *Gerstein* requires a judicial determination of probable cause as a prerequisite to interstate extradition. After *Gerstein* such a determination must precede "any significant pretrial restraint of liberty," 420 U.S. at 125, 95 S.Ct. at 868, and we think interstate extradition necessarily involves significant restraint. At best extradition means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between. At worst it means separation from a familiar jurisdiction and effective denial of the support of family, friends and familiar advisors. If the charge is unsupported, the individual charged has a very substantial interest in having the error brought to light before rendition.

Against this, respondents point to two governmental interests at stake in extradition which were not considered in *Gerstein* and which, respondents say, would be defeated by reading *Gerstein* to require a pre-rendition judicial determination of probable cause. These are the interests of comity in transactions between sister states,[1] and of efficiency in bringing to justice criminals who have fled interstate.[2] We agree that these interests are of the utmost importance, but not that they are significantly burdened by imposition of *Gerstein*'s requirement in this context. Respondents seem to assume that if a judicial determination of probable cause must precede

---

1. *See In re Ierardi*, Mass., 321 N.E.2d 921, 924–25 (1975):

   "[P]rinciples of comity operate against inquiry into the criminal procedures of the demanding State. . . . It would seem that we should be hesitant about examining the constitutional basis of another State's actions, and we do not agree that the Fourth Amendment requires that we do."

2. *See In re Maldonado*, Mass., 304 N.E.2d 419, 421 (1973):

   "[I]nterstate extradition is a summary executive procedure whose effect is essentially to enlarge the territorial area for lawful arrest, the asylum jurisdiction being added to the demanding jurisdiction. . . ."

extradition, it must be provided by the courts of the asylum state, where the fugitive is held. This is not so. *Gerstein* explicitly rejected the need for adversarial procedures; it required only the neutral and detached judgment of a judicial officer or tribunal, and contemplated that this could be provided before as well as shortly after arrest.[3] Thus nothing in *Gerstein* prevents the demanding state from providing the requisite pre-rendition determination of probable cause.

■ With this in mind, we do not believe it compromises the principles of comity to require a judicial determination of probable cause before rendition. Such a determination is fully consistent with reliance by the asylum state on the regularity of the demanding state's procedures. If, for example, the papers submitted by Florida were to show that a judicial officer or tribunal there had found probable cause, Massachusetts would not need to find probable cause anew, nor would it need to review the adequacy of the Florida determination. Instead, it would be entitled to rely on the official representations of its sister state that the requisite determination had been made; thus in our view Massachusetts may credit an arrest warrant shown to have issued upon a finding of probable cause in Florida just as it would credit a Florida indictment.[4]

Nor do we believe that a prior judicial determination of probable cause in this context presents such an obstacle to efficient law enforcement as to justify postponing the determination until after rendition. We recognize that the fourth amendment standards governing arrest represent "a necessary accommodation between the individual's right to liberty and the State's duty to control crime." *Gerstein, supra,* 420 U.S. at 112, 95 S.Ct. at 862. Thus *Gerstein* sanctions the possibility of warrantless arrests followed by brief periods of detention before a magistrate finds probable cause on the ground that an earlier judicial determination would pose "an intolerable handicap for legitimate law enforcement." *Id.* at 113–14, 95 S.Ct. at 862. But we see no comparable justification for postponing a judicial determination of probable cause until after interstate rendition. Warrantless arrests of fugitives will, of course, frequently be necessary. But once the fugitive is in custody in the asylum state, in the words of *Gerstein,* "the reasons that justify dispensing with the magistrate's neutral judgment evaporate." *Id.* at 114, 95 S.Ct. at 863. Under present arrangements,[5] papers must in any event be prepared in the demanding state, including (in the absence of an indictment) an affidavit and some form of judicial process, and under *Gerstein* probable cause must in any event be judicially determined before any extended pretrial detention in either the asylum or the demanding state. In this context to require the judicial determination of probable cause to precede rendition is to impose little additional burden on the states.

3. *See Gerstein v. Pugh,* 420 U.S. 103, 116 n. 18, 95 S.Ct. 854, 864, 43 L.Ed.2d 54 (1975) ("A person arrested under a warrant would have received a prior judicial determination of probable cause. . . .").

4. We do not suggest that a judicial determination of probable cause in the asylum state would not provide an alternative means of satisfying fourth amendment standards. *See Kirkland v. Preston,* 128 U.S.App.D.C. 148, 385 F.2d 670 (1967); *cf. Raftery ex rel. Fong v. Bligh,* 55 F.2d 189 (1st Cir. 1932). *See also Greci v. Birknes,* 527 F.2d 956 (1st Cir., January 9, 1975) (discussing a comparable procedure in international extradition without reaching any constitutional issue). We note,

however, that such a procedure might be foreclosed by section 20 of the Uniform Criminal Extradition Act as enacted by Massachusetts, M.G.L. ch. 276, § 20H.

5. Nearly all states have enacted the Uniform Criminal Extradition Act, *see* M.G.L., ch. 276, at 74–75; 1975 Supp., at 16. Section 3 of the Uniform Act, as enacted in Massachusetts, M.G.L., ch. 276, § 14, provides that the demand for rendition must be accompanied: "by a copy of an indictment found, or of an information supported by affidavit, in the demanding state, or by a copy of an affidavit made before a magistrate of such state, and by a copy of the warrant which was issued thereon . . . ."

Here the rendition demand was based on a Florida information that, as *Gerstein* makes clear, does not embody the prior judicial determination of probable cause required by the fourth amendment, and the requisite determination has yet to be made.[6]

Affirmed.

---

**6.** Counsel for respondents conceded in argument before us that the affidavit accompanying the demand provided no independent basis for a judicial finding of probable cause.